Mattison *v.* Young.

MATTISON, appellant, and YOUNG, respondent.

Where the holder of a promissory note made by V., M. & C. was in-
duced to surrender it, and take therefor a note of V.'s alone, upon the
strength of a representation made by V. that he had $3000 worth of stock
in a certain bank, and could get the note discounted for him, when V.
was not, in fact, the owner of the stock, and M., one of the joint debtors
upon the surrendered note, and the true owner of the stock, was present,
and acquiesced in V.'s representation, and in effect reiterated it, M. is
estopped from asserting his title to the stock, as against the holder of the
note.

The opinion of the Chancellor is reported in 8 *C. E. Green*
325.

*Mr. Shipman,* for appellant.

*Mr. Vanatta,* for respondent.

The opinion of the court was delivered by
BEDLE, J.

In organizing the First National Bank, at Washington, in
this state, the appellant, Mattison, subscribed for one hundred
shares of stock in his own name, and, in order to evade the
force of a resolution that no one should subscribe exceeding
that amount, and thereby obtain more stock, he procured
others to subscribe in their own names, but, in reality, for his
benefit. Among those was Jacob S. Vough, who subscribed
for thirty shares, at one hundred dollars each, the money for
which was furnished by Mattison. This subscription was
made in 1864, and the stock was held in Vough's name till
June 2d, 1868, when, in accordance with a secret writing of
trust, he made a transfer of the stock to Mattison. Upon the
strength of this stock, Vough was elected a director of the
bank from year to year, and also in his own name received
the dividends upon it, but secretly passed them over to Mat-
tison. To all appearances, Vough was the real owner of the

stock, and as a director he did not hesitate to swear, in the terms of the act of Congress, that he was the bona fide owner in his own right of the said stock. Mattison, also, was a director, and was, to say the least, equally guilty with Vough in the fraud.

During this condition of things, Vough, Mattison and one Canfield became indebted to the complainant, Young, in $5000, for mules purchased by them of him, and for for which a note of that amount was given. On May 4th, 1868, this note was taken up by the makers, by the payment of about $2700 in cash, and also by the transfer of two or three notes of others, for mules purchased of Vough, Mattison and Canfield, and also by the giving of a note signed by those three, for about $700, and also of a note for $700, signed by Vough alone, Mattison and Canfield being thereby, to the extent of that note, released from their joint indebtedness with Vough. This last note was payable thirty days after date, and was taken by Young, on the strength of a representation by Vough to him, and acquiesced in by Mattison, to the effect that his (Vough's) note was good for $700 ; also, that he was a director in the bank ; that he had $3000 worth of stock in there, and could get the note discounted for Young. This representation was made at the giving of the note, when Mattison was present and remarked that it was perfectly good, and would answer Young the same as money, as Vough was a director and stockholder, and could get it discounted for him. These facts rest chiefly upon the express evidence of the complainant. The answer of Mattison is not upon oath, but he was sworn as a witness, and as such denied Young's statement, but looking at the nature and circumstances of the transaction, as well as the conduct of Mattison, I think the true state of the case is according to Young's evidence.

As to Vough's ex parte affidavit, admitted by consent, I think it is *felo de se.* His admission that he took the oath prescribed by law, and his attempted explanation of why he

took it, show that he is too reckless and wanting in moral sense to be relied upon. As between Young and Mattison, looking at the testimony in the light of the circumstances, I am convinced that the statement of the former is true, and that when Young accepted the individual liability of Vough, in lieu of that of the three makers of the five thousand dollar note, the representations as stated were made by Vough and Mattison to Young, and the note was accepted by Young on the faith of them.

The note was discounted at the bank through the procurement of Vough, Young having endorsed it. Just before the note came due, Vough transferred the stock to Mattison. After the note was due, Young took it up, and Vough confessed a judgment to Young for the amount thereof; execution was issued, and levy made upon the stock that Vough had held; ten shares were sold by the sheriff and purchased by the complainant. The bill was filed to set aside the defendant's transfer; to establish the complainant's title, and to compel a transfer of the stock to him.

The mere statement of the case, without any discussion, shows that Mattison is estopped from asserting his title against the complainant; the ground of estoppel being, that Young was induced to give up the security of the three joint debtors (including Mattison) and to give credit to Vough alone, on the belief that Vough was the owner of the stock, and for that reason good, which belief was intentionally created by the representations of Vough and Mattison to that effect, made to Young at the time of the giving of the note. This conclusion is warranted by the evidence, and relieves the case from the difficulties of sustaining the decree, on the more general ground of estoppel stated by the Chancellor. The action of this court is based entirely upon the conclusions of fact we have reached, and on the doctrine of estoppel alone.

The complainant also sought to be subrogated to any right the bank had by virtue of a by-law, that no transfer should be made of any stock, without the consent of the board of

directors, while the stockholder was liable to the bank as a principal debtor or otherwise. Whether such by-law was legal under the act of congress of 1864, or, if so, whether the complainant had any right of subrogation, it is not intended now to determine, and the same must be considered as unsettled in this court.

The decree must be affirmed, with costs.

For affirmance—The CHANCELLOR, BEASLEY, C. J., BEDLE, CLEMENT, DALRIMPLE, DEPUE, DODD, GREEN, SCUDDER, VAN SYCKEL, WOODHULL.    11.

For reversal—None.